Your Honor, this case rests almost entirely upon the correctness or the incorrectness of the Immigration Court's written decision as to whether the Immigration Court construed the facts correctly or not. The BIA decision is little more than a recitation of the Immigration Court decision, and it's largely a rubber stamp of the judge's findings, with one curious exception. The BIA actually misinterpreted one of the Immigration Court's conclusions. The BIA erroneously asserted that the evidence supporting her claim, meaning petitioner's claim, that she participated in an internship was insufficient, when in actuality the Immigration Court said the respondent's explanation for the lack of internship documentation was adequate, as she stated that she called the school and asked for it. So, let's proceed. I mean, the entire case rests on the issue as to whether the petitioner adequately provided evidence and whether she sufficiently explained why there were not, that certain items of evidence were not reasonably able to be obtained. The court's decision is something of an exercise in contradiction. An example is in regard to evidence of the internship. On one page regarding the internship, the court said, the court finds the respondent's explanation for the lack of internship documentation to be adequate, as she stated that she called the school directly and asked for it. On the very next page of the same written decision, the court then says the respondent failed to submit sufficient evidence to establish that she interned at the company where she met the supervisor with whom she had a relationship and got pregnant. A complete opposite conclusion. So, on one page, the court finds that her explanation was adequate. On the very next page, the court holds that her evidence regarding that item of evidence was insufficient. It's almost as though on one page the court giveth and on the next page the court taketh away. Another issue regarding the court's decision was regarding the medical records from the hospital in China. The court states in its written decision, the court is not persuaded by the respondent's explanation because it does not reflect any attempt by her to contact her hospital for medical documents. Well, the respondent testified that in order to obtain the medical documents from the hospital, she asked her father to go to the hospital and obtain the documents. Her father explained in his affidavit that he went to the hospital and requested the medical records. The petitioner had to come in person to the hospital to obtain her own medical records. However, the father didn't give up and went back to the hospital on several occasions and eventually, he was able to obtain a document that was titled a certificate of diagnosis which had been signed by a doctor at the hospital which specifically stated that the petitioner had received an abortion on May 28, 2001. So, this certificate was entered into evidence to show that respondent had in fact received an abortion. The court says the respondent didn't make any attempt to obtain the records from the hospital. That's clearly erroneous. Obviously, she did make an attempt. The father went several times and eventually did obtain at least one record, the certificate of diagnosis. This is another holding from the immigration court which is clearly incorrect. As a result of the Batari case, I may not be pronouncing that correctly, but it's from the which was held in 2016. This case, it was after her initial presentation of her evidence into the court, but it was before her final hearing. The Batari case said that the court asked to give her an opportunity to obtain that evidence. So, the court made an additional order, itemized 10 different items of evidence that she should obtain. So, then the petitioner was given opportunity. In her testimony, now, one of the items of evidence which was request number nine of the court was for documents substantiating the respondent's secondary school attendance and internship had been arranged by the school and that all of the documentation regarding the internship was held by the school, maintained by the school. She was also asked in regard to if there's any additional evidence other than her certificate of graduation from the school. She was already entered into evidence, but she was asked if there was additional documentation regarding her schoolwork and she testified that there was a booklet for each semester that contained the grades for that semester, but eventually the booklet had to be turned back to the school in order to be exchanged for her graduation certificate, which she submitted to the court. Counsel, would it have been possible for Ms. Wang to contact either the hospital or the school from the United States to get any records, if they existed? In regard to the hospital, as just discussed, the hospital explained to her father that she had to appear in person to obtain the records. So, notwithstanding that explanation, could she have reached out to the hospital from the United States? Her attempt to reach out to the hospital was specifically sending her father to get those records. I don't know if there was any additional effort other than that, but her father certainly made ample efforts to obtain. He went back to the hospital several times. In regard to the records from the school, she actually did call the school and requested the records. In fact, the court acknowledges that in the written decision that she was told by the school that the records of the internship no longer existed. It was too long ago. There's no discussion in the record, as regarding the booklet, other than her testimony that the booklet was given back to the school. She did, in fact, call the school, requested the immigration or the internship records. Obviously, since the school had both the internship records and the class records, the booklet, it's reasonable and logical to assume that when she called the school directly and asked for those records, she asked for both the records of the internship and the records regarding the booklet. That stands to reason. The court curiously holds that her explanation about the internship is adequate because she was told that it no longer existed, but that her explanation regarding the booklet was inadequate, insufficient, because she'd never made any attempt to call the school. Well, obviously, she did call the school. The court acknowledges that she called the school, and yet in the same paragraph, the court finds that her internship documentation, her explanation regarding the internship is inadequate. She did not make any attempt to call the school in regard to the booklet. Well, that's a completely unreasonable inference. It doesn't make any sense that she would, in her call, request one set of records and not request the other document. So, the court is making an inference based upon what? I don't know, but obviously, a petitioner asserts that that's an unreasonable inference. An additional item that the court held against her was the test that the court found that her mother didn't testify as a witness. Well, in the 10 items that the court specifically instructed regarding additional evidence, the court says, item number seven, the court requests an affidavit from the respondent's mother detailing the affidavit's knowledge of the respondent's pregnancy and forced abortion. Okay, the petitioner supplied an affidavit from the mother specifically addressing the court's request. So, then later on, the court holds that that's insufficient because the mother didn't testify in person and her affidavit wasn't notarized by a notary. I mean, the court specifically requests an affidavit and then the court holds, even though the affidavit was supplied, the court holds against her because the mother didn't testify. If the IJ had requested that the mother testify, would she have testified? Yes, of course. This is a case that should be the poster case for the Batari case. It's almost identical. In Batari, the court held against the petitioner because his brother didn't testify, but Batari held against the court because the court never made any requests for the brother to testify. Well, in a way, this case is an abuse of Batari because what this IJ did is say, okay, Batari says I have to request something before I can find a lack of corroboration by saying they didn't provide it. So, I'm going to list ten types of documents, some of which are most likely not to even exist at all. For example, the IJ wants documents showing that the abortion was forced. Well, I think we have cases that say the government of China is not going to keep a document that says we forced an abortion. There will be a record of an abortion, but it's not going to say admit to torture or to force compliance with the family planning policies. We know that exists from the State Department records, but you're not going to see a government document saying, yes, we conducted a forced abortion on X day and keep that in their file. I don't know if you made this argument, but I'm wondering now that the Ninth Circuit did the Batari case, if what the IJ practice is going to be is to list, find the immigration, find the migrant credible, and then say, but I need all possible to get documents in order to corroborate this testimony. That's my take on this case. Your Honor, you make an excellent observation. You're exactly right. The court, item number seven, specifically requests affidavit or knowledge alleging pregnancy and forced abortion. In two separate places in the court's written decision, it references a forced abortion. Anyone that practices immigration law, especially from China, knows that that's never going to happen. There's no doctor in China, nor any hospital in China, that's ever going to identify an abortion as having been forced. The petitioner did respond to that particular item of evidence. The petitioner supplied a certificate of diagnosis specifically stating that the petitioner got an abortion in 2001, and that was submitted into evidence. Maybe we need to write a gloss on Batari that says that the documents in the Batari notice that the IJ requests for corroboration have to be reasonably attainable. Batari says that specifically. Batari says that that the applicant should provide evidence that corroborates otherwise credible testimony, or must provide, or unless the applicant does not have the evidence and cannot reasonably obtain the evidence. So, Batari specifically does make that statement in regard to the reasonableness. Slightly different, because that puts it on the immigrant's burden to say it's not reasonably attainable, which requires them to say your order doesn't make sense to the person deciding their fate. Maybe the IJ should have an obligation to only request things that would exist in the world. Anyway, I'm taking you over with my questions, and I should be directing these and maybe we should hear from Mr. Yosef on these questions. I would reserve, if I may, a chance to respond to Mr. Yosef. Thank you, Your Honor. Thank you. May it please the court in all use for the government. The court should deny the petition for review. Substantial evidence supports the agency's determination that the petitioner did not meet her burden of proof for asylum relief. It's important to note that the standard review here is a substantial evidence standard, where the petitioner has to demonstrate the record compels reversal of the agency's determination, and the government submits that they have not met this burden. The two central aspects of this claim, of this case, are whether the petitioner had undergone an abortion, a forced abortion, that resulted from an internship she had in which she became pregnant with a supervisor after entering a relationship with a supervisor, and then the owner of that company reported her to the police, to the family planning officials, which resulted in the abortion. And the immigration judge here took the petitioner's testimony, and after concluding the hearing, determined that the petitioner did not provide sufficient corroborating evidence, and listed the necessary documents, documents necessary to help corroborate the petitioner's claim. Actually, it's also important to note that at the outset of the petitioner's first hearing, the immigration judge observed that the petitioner's corroboration was insufficient at that time, that right before she gave testimony, so the immigration judge gave a warning or kind of noted to the petitioner that your corroboration was lacking, which at that time only included the certificate of diagnosis and her father's epidemic. What kind of medical evidence would one reasonably expect to see that would prove that the abortion was forced rather than voluntary? I'm not sure, Your Honor, in terms of what can be obtained. I don't think there's a probability of such documents showing that an abortion is forced. Here, not to step into the immigration judge's fact-finding role, but it could have been a situation of having, for example, the mother testify in terms of... But the immigration judge asked for an affidavit. If he needed the mother to testify, shouldn't he have asked for her to come testify? Well, two things on that, Your Honor. First, it's established precedent for the agency in this court that an interested witness, such as a family member, that their affidavit is generally given less probative value and that having them subject to cross-examination is something that would aid in the fact-finder and would bolster that affidavit. I'm sorry, you're not answering my question. My question was that I.J. asked for an affidavit. He could, if the fact that the mother didn't come to testify was going to be held against her, why didn't he ask for the mother to come testify? Well, Your Honor, I believe in... I know in Batari that there was an issue that was raised with the sibling testifying. I think in subsequent cases, this court has sort of loosened that requirement in terms of what has to be asked for exactly. I don't know if the I.J. is exactly required to ask for the specific pieces of document or pieces of evidence in order to meet this court's notice and opportunity to respond requirement. I think in the case subsequent, simply the immigration judge saying that there is some information here lacking, what you have in front of me is not enough, was sufficient in terms of... I believe in certain cases that's been stated as being sufficient as giving the notice. So I don't believe the I.J. was required to specifically state, I need your mother to come and testify. As to the forced abortion, she provided credible testimony that she had a forced abortion, a certificate of abortion for the stated time period, and affidavits from her parents confirming both the forced abortion and the story that she was unmarried at the time. And why isn't that sufficient to compel a conclusion that she suffered a forced abortion in China? Well, Your Honor, just taking note of the evidence you referred to, for example, the certificate of diagnosis, the immigration judge questioned the reliability of that document based on a couple of reasons. One being that it wasn't issued contemporaneously, which the document issued contemporaneously to an event is given greater weight. This one was issued over 10 years later. Secondly, the fact is the father's affidavit details how he made repeated efforts to obtain the medical records from the hospital, and they kept turning them away because it was meant to be, I guess, the privacy of the petitioner, that she was the one who has to request the document. Yet, at the conclusion of his efforts, they still gave him a certificate of diagnosis, which revealed very personal information of the petitioner regarding the alleged abortion. So the immigration judge took those two factors, the lack of contemporaneous production of the document, as well as those circumstances of how it was obtained, and grieved that document as the immigration judge has entitled within their discretion, lesser weight. And in terms of the two parents' affidavits, the fact that they are interested witnesses and it's not a notarized document are reasons for the immigration judge to grant it less weight, as well as the fact that just in terms of not to the other aspect of her claim, something that the petitioner noted in their brief was central to her claim was the internship itself. Neither the mother nor the father's affidavit referenced that, provide any sort of corroboration for the internship, which is kind of the catalyzing event here, where she met the supervisor, she became pregnant, and then was ambushed essentially, as she claims, by the owner of the company, and kind of turned over to a family planning official. Outside of her testimony, we don't have anything corroborating that specific story. If she had presented her mother, for example, or her cross-examination, or if she submitted an affidavit from some, if her parents' affidavits actually mentioned it, or… Counsel, is it possible if I may interject? Yes, Your Honor. The question I have is this. Will the interviewee specifically ask for an affidavit? I don't see how to hold it against her that she gave an affidavit and not a live testimony. I understand the point, Your Honor. I would say that the immigration judge was still entitled to accord the affidavit less weight based on the, for example, the fact that it was a notarized and the mother of the witness. And also, I think you look at the affidavits in context of the record as a whole, not solely as the documents themselves. I think you're right, that an IJ can give less weight to an affidavit. But if the ground of the IJ or board decision is insufficient corroboration, because there was an affidavit, I don't see how you can say that when that was what was requested. I guess it goes to what is the document corroborating, essentially. Does it corroborate the forced abortion as well as the other central aspect of the claim, which is the internship? For example, it doesn't corroborate the internship itself, which is central to her claim. So I think that is part of why the immigration judge, I guess, gave less weight to it. But I don't, I can't say. Was the certificate of the abortion that stated 2012 in the original asylum application? Because I noticed that they came in early 2012 and filed, the IJ says shortly thereafter. So it would make sense that a document they brought from China to reflect the forced abortion, which was the basis of her claim back in 2012, would be dated 2012. But that still doesn't address the fact that it was obtained over 10 years after the event itself. Well, maybe they weren't, at the time of the event, they weren't thinking that they were going to come seek asylum a decade later in the United States. In fact, they weren't even married. They didn't have their children back then. Well, Your Honor, I would say that the question here is if the burden of proof is on the petitioner to marshal the evidence and to the satisfaction of the immigration judge, that they've actually met their burden of proof in terms of the claim that they're raising. So what more than that which they could not obtain would have satisfied this immigration judge? I can't speak to that specifically, Your Honor, except to say that, for example, I guess like kind of the circumstances that she lays out of how she fell into the hands of the family planning officials are not substantiated by anyone outside of her own testimony. If more evidence would have been given there, that would have bolstered the overall kind of sufficiency of her evidence to meet her burden of proof. And it was lacking there. And the immigration judge is best positioned to assess kind of the facts and determine whether or not they are sufficient to meet the petitioner's burden of proof. Immigration judge ultimately determined that she failed to do so. This is troubling because I don't know what more it would be logical or reasonable to request from her. The parents might have been able to come in and give testimony had that been requested. But it's troubling to me. You don't proceed in your life. I don't know, maybe you do. I know when I applied to become a district court judge, I had to go back and compile every place I had lived, every roommate I had, every job I worked at, going back to when I was 18 years old. And at that time I was 40. And it was an impossible task. I didn't keep records of the five different apartments I lived in in my senior year of college. A regular person doesn't ask for the receipt for their first abortion. I probably missed some things or forgot some things or didn't have records of things and they never made it on. I'll make that omission now. Almost 25 years later. People don't live their lives in that way. Let me ask you, could you do that? Could you fill out everything you did between today and when you were 18? No, Your Honor, I've gone through the same security clearance sort of thing where you have to go back and make sure that person you do for your neighbor across the street, they can verify that you live there. I've been through those. So I understand how those are onerous burdens and I get that. Within this asylum context, the privilege of asylum is one that is difficult to meet for a reason. It's meant to be for the most serious cases. And the petitioner has a heavy burden in these cases to meet their burden to establish eligibility for relief. There's a lot of skepticism too, I know, that women who claim that forced abortions are just saying that. I've seen it in other cases, I've written about it. And some of that I sense is going on in this case. Well, Your Honor, based on the decision we have before us, the immigration judge, as affirmed by the board, provided us, provided the support with the reasons of why they rejected the petitioner's claim, the lack of corroboration, and a percentual aspect of her claim. And based on those findings, and the fact that the petitioner, we believe that has not demonstrated the record of compelled reversal of that determination, that the petition for review should be denied. If there are no further questions, I submit the rest of my time. Okay, thank you so much, counsel. And thanks for the responses to my questions. I appreciate it. Mr. Murray, I'll give you a minute. Try to be brief, Your Honor. The event that gives rise to petitioner's claim for asylum is the forced abortion. The document that so much has been spoken of, it identifies that as an abortion. It doesn't say forced abortion, but it identifies it as an abortion. Also, regarding that issue, neither the judge nor the government questioned the authenticity of the document. The court certainly didn't send it to forensics to have it tested as to whether it's an authentic document or not. So there's no reason to assume that it's not an authentic document. As regarding the mother's testimony, the mother, I mean, the mother wasn't present. The mother nor the father were present at the time that the petitioner had the forced abortion. And so any testimony that they could provide would be strictly hearsay as regarding the event of the forced abortion. That's the primary reason they didn't testify. The secondary reason is the court specifically requested an affidavit, not testimony. And so it's completely unfair for the court to ding after the fact to say, well, we don't give it any credence because it wasn't notarized, which is kind of out of left field. But also, you know, that she could have come in as a witness. That's totally unfair for the court to do that. Petitioner would submit, your honor, that in each instance, the court's written decision either is at best completely contradictory. There's completely contradictory statements in the court's decision. On one page, they say it's sufficient evidence. On the very next page, they say it's not sufficient evidence. That doesn't make any sense. At best, the judge's decisions were contradictory. And at worst, they were just simply wrong. The petitioner requests, your honor. I think Judge Gold might have a question. I did, yes. Okay. I wanted to know, does the record show any adverse credibility decision by the IJ about your client? And if not? No. And don't we have to accept her statement the abortion was forced? I appreciate your honor's question because in three separate places in her written decision, the court specifically states that the petitioner testified credibly. The first, in the initial finding regarding credibility, the court said the respondent failed to submit sufficient evidence to establish, oh, wait a minute. I'm sorry. Wrong place. The court says the court finds that respondents in court testimony did not present significant inconsistencies such that the court would find that she lacked credibility. Thus, having found the respondent's testimony credible, the court now turns to whether she satisfied her burden of proof to establish eligibility for asylum. I could go on and read two other statements in the court's written decision where she specifically states that the testimony is either credible and or persuasive. The court never made any question of the respondent's credibility. Thank you, counsel. You answered my question. We understand your argument, counsel. We're going to take this case under submission and declare that this session of the court is adjourned for today. Thank you very much. Thank you. Thank you all.
judges: Wardlaw, Gould, Donato